**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bethany Rae Gappinger,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-04133-PHX-JAT<br>**ORDER** |

Pending before the Court is Bethany Rae Gappinger's appeal of the Commissioner of the Social Security Administration's ("SSA," or "the Commissioner") denial of Social Security benefits. (Doc. 19). The appeal is fully briefed (Doc. 19, 21, 22), and the Court now rules. Although the SSA decision adequately addressed Ms. Gappinger's subjective symptom testimony, it failed to fully consider a medical opinion from an examining doctor. Because additional discussion of this finding would affect the SSA's understanding of the extent of Ms. Gappinger's impairment, the Court will reverse and remand the denial.

## I. BACKGROUND

Ms. Gappinger applied for both Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) in June 2015, alleging a disability onset date of May 1, 2015. (Doc. 19 at 1). She was last insured for SSDI benefits on September 30, 2018. (*Id.*) On two occasions, an Administrative Law Judge ("ALJ") found that Ms. Gappinger was not disabled and, on both occasions, this Court remanded their resulting denial of benefits. (*Id.*) After two additional agency hearings, Ms. Gappinger received the decision

that the Court reviews today.

Before she could receive SSA benefits, Ms. Gappinger needed to show that she is disabled. *See* 42 U.S.C. §§ 423(a)(1)(E), 1381a. To be considered under a disability, she must be unable to engage in "substantial gainful activity" due to a medically determinable physical or mental impairment. *Id*. § 423(d)(1). This impairment must be severe enough to stop her from engaging in any substantial gainful work, including any of her previous work, within the national economy. *Id*. § 423(d)(2). The ALJ consulted the prescribed five-step sequential process created by the SSA when deciding whether Ms. Gappinger was disabled under this standard. (Doc. 13-15 at 7-9, Administrative Record ("AR") at 1354-56);[1] *see* 20 C.F.R. § 404.1520(a)(1). Each step may be dispositive. 20 C.F.R. § 404.1520(a)(4)(ii).

Step One of the regulatory test determines whether the claimant is engaging in any substantial gainful activity. *Id*. § 404.1520(a)(4)(ii). To pass this step of the analysis, one cannot perform "significant physical or mental activities" that are usually completed "for pay or profit." 20 C.F.R. § 416.972(a)–(b). Here, the ALJ confirmed that Ms. Gappinger had not participated in any substantial gainful activity since her alleged onset date. (AR at 1356). She thus continued to the next step.

Step Two considers if the claimant has a severe "medically determinable physical or mental impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). To continue past this step, the given impairment must "significantly limit" Ms. Gappinger's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ALJ here found that several of Ms. Gappinger's medical conditions qualified as severe physical or mental impairments.[2] (AR at 1356-59). She accordingly continued on to the next step.

Step Three asks whether the claimant's impairment(s) matches an impairment listed

[1] The Court collectively refers to AR, which is split into 20 continuously paginated parts, as the Administrative Record.

[2] The ALJ decided that the following conditions satisfied Step Two's threshold: nutritional anorexia secondary to cannabis-associated hyperemesis, heavy metal toxicity, bipolar disorder, an unspecified depressive disorder, generalized anxiety disorder, unspecified trauma and stressor-related disorder, alcohol use disorder, and marijuana dependence. (AR at 1356-59). The Court notes that, while parts of the ALJ's decision discuss mental disorders, the claimant raises no argument with regard to that discussion. (*Id*. at 16). Nor does she contest the ALJ's discussion of a medical practitioner's opinion other than the two covered below.

in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). Absent a match, an ALJ examines the claimant's ability to perform certain physical and mental work despite impairment. *Id*. §§ 404.1545(a)(1), 404.1545 (e). That ability is often referred to as a claimant's "residual functional capacity" ("RFC"). This examination is based on the record and the entirety of the claimant's impairments (including not severe impairments) that can "affect what [the claimant] can do in a work setting." *Id*. §§ 404.1545(a)(1)–(2).

The ALJ here determined that Ms. Gappinger did not have an impairment matched in the Appendix and that she had the requisite RFC to perform sedentary work. (AR at 1359-74). In making that finding, she reviewed the record and addressed certain pieces of evidence. Beginning with Ms. Gappinger's own statements about the impairments, the ALJ determined that while some described symptoms required limitations, testimony about "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR at 1362). The ALJ also discussed opinions from medical professionals, including Donald Fruchtman, D.O., and Ms. Gappinger's nurse practitioner (NP), Sherry Tackett. (*Id*. at 1370-71).

Step Four identifies whether the claimant's RFC allows for the physical and mental demands of work done "within the past five years that was substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). The ALJ in this case found that Ms. Gappinger had no past relevant work and therefore continued to the final step. (AR at 1375).

Step Five considers whether the claimant has the capacity to perform other work given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(v). If Ms. Gappinger can adjust to other work, she must not be found disabled; if not, she must be found the opposite. *Id*. The ALJ here relied on a vocational expert to conclude that, given relevant age, education, and work experience, Ms. Gappinger was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and accordingly decided against granting SSDI or SSI benefits. (AR at 1376).

## II. LEGAL STANDARD

This Court may set aside the ALJ's decision only if it is "based on legal error or not

supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). If at least "more than scintilla but less than a preponderance" of relevant evidence reasonably supports the ALJ's decision, an affirmance is proper. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). The Court consults the entirety of the record when applying this standard. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for drawing logical inferences from the medical record, resolving conflicts in medical testimony, determining credibility, and resolving any ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). The ALJ's decision will accordingly be upheld if the relevant evidence subjects it "to more than one rational interpretation." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). Finally, this Court "may not affirm the ALJ on a ground upon which [she] did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

According to Ms. Gappinger, the ALJ's analysis was legally insufficient for three reasons. She first says that the ALJ failed to render specific, clear, and convincing reasons for rejecting her subjective symptom testimony. (Doc. 19 at 15-20). Ms. Gappinger next asserts that the ALJ failed to give germane reasons for her rejection of NP Tackett's opinion. (*Id.* at 23-26). She lastly argues that the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for rejecting favorable assessments from Dr. Fruchtman. (*Id.* at 20-23). The Court addresses each argument in turn.

### A. Subjective Symptom Testimony

The thrust of Ms. Gappinger's first claim of error focuses on the ALJ's citations to the medical record to demonstrate that the subjective symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 19 at 16) (quoting AR at 1362). In her view, any "inconsistency with medical records cannot be the

only reason to reject a claimant's symptom testimony." (*Id*. at 17).

Indeed, the ALJ cited to the medical record at multiple points during her Step Three analysis. (AR at 1363 (contrasting reported persistent anorexia symptoms with medical evidence showing stable weight gain, and normal physical function)); (AR at 1365 (contrasting reported persistence of heavy metal toxicity with medical evidence showing past denials of issues, normal motor function, and typical normal neurological function)); AR at 1366 (contrasting reported persisting Lyme disease symptoms with the same medical evidence described above)). She found that these examples of conflicting medical evidence demonstrated that the alleged "intensity, persistence, and limiting effects" of Ms. Gappinger's impairments were not as extreme as presented. (AR at 1362-66).

While the Court agrees with Ms. Gappinger's overall description of the ALJ's denial, it disagrees with her understanding of the legal standard. An ALJ may reject testimony about the severity of a claimant's reported symptoms "only by offering specific, clear, and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). An ALJ must find "what testimony is not credible and what evidence undermines the claimant's complaints" to satisfy this standard. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). If the ALJ's credibility determination is "supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Moreover, ALJs are unable to "render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborating' every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). That does not mean, however, that medical evidence alone cannot be used to support a credibility determination. As the Ninth Circuit Court of Appeals has repeated, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt*, 53 F.4th at 499 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th

Cir. 2008)).

Here, Ms. Gappinger mischaracterizes guiding authority "as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony." *See id*. at 498. By determining that the testimony was not "entirely consistent" with medical evidence and then pointing out various discrepancies, the ALJ made a credibility finding rather than demanding objective medical evidence to corroborate those statements. Indeed, the ALJ made that point clear by writing, on multiple occasions, that the reported symptoms were not as debilitating as presented. (AR at 1364-66). The Court therefore finds no error in the ALJ's reliance on medical evidence to make an adverse credibility finding regarding subjective symptom testimony.[3] *See* (*id*. at 499 (explaining that Ms. Gappinger's understanding would permit "a claimant's subjective evidence to effectively trump all other evidence in a case")).

Ms. Gappinger also alleges that the ALJ of failed to consider her symptoms' change over time. In her view, the medical evidence featured above could not be inconsistent with her descriptions because the former was consistent with the latter *at some point in time*. (Doc. 19 at 17-19). For instance, she explains that her reported anorexia symptoms were consistent with the record because her weight was different at the beginning of the relevant period. (*Id*. at 17-18); *see also* (*id*. at 18 (reporting that she used to use an assistive device).

A holistic reading of the decision, however, belies that contention. When conducting her analysis, the ALJ faithfully described Ms. Gappinger's reports throughout the relevant period. *See Smith v. Berryhill*, 752 F. App'x 473, 475–76 (9th Cir. 2019) ("Smith correctly notes that fibromyalgia symptoms can wax and wane, but the ALJ did not cherry-pick the medical record . . . ."). The ALJ indeed mentioned the very pieces of evidence highlighted in this appeal. (AR at 1363 (discussing past weight loss)); (AR at 1364 (discussing past use

---

[3] The Court also notes that the ALJ partly discounted Ms. Gappinger's testimony about the intensity, persistence, and ongoing limitations concerning her anorexia because she used marijuana after being told to cease such use by her medical providers. (AR at 1363). This practice may be considered by the ALJ when considering a credibility finding. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). While Ms. Gappinger contends that she attempted to cease marijuana use at first (Doc. 19 at 18), she does not explain how or why any additional consideration of that assertion would change the ALJ's analysis, which was based on other evidence.

of assistive device). But after considering this longitudinal history, including the coming and going of Ms. Gappinger's symptoms, the ALJ concluded that the "intensity, persistence and limiting effects" of the self-reported symptoms were inconsistent with the evidence in the record. (AR at 1363).

The Court therefore finds that the ALJ gave specific, clear and convincing reasons for discounting Ms. Gappinger's testimony. Although the ALJ concluded that the given impairments required some workplace limitations, she described that the testimony concerning intensity, persistence, and ongoing limitations was inconsistent with the record. (*Id.*); *see Smartt*, 53 F.4th at 499. She also identified the particular testimony she found not credible and explained which medical records undermined the testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the ALJ showed her work as to each contested issue. *See Smartt*, 53 F.4th at 499.

First, the ALJ properly fortified her finding that the nutritional anorexia symptoms were not intense, persistent, or limiting. She first cited to various treatment records showing Ms. Gappinger's weight gain, denying nausea and vomiting, and recording normal physical abilities and alertness in proving that the statements contradicted the record. (AR at 1364). She also cited to previous subjective statements announcing unassisted ambulation and daily living, as well as varied medical exams reflecting normal gait and coordination to show that the effects of fatigue, weakness, and imbalance were "not as limiting as alleged." (*Id.*). That reasoning and consideration of evidence was reasonable given the differing degrees of incapacitation presented by Ms. Gappinger and the listed medical evidence, even if this Court would have come to a different conclusion. *See Thomas*, 278 F.3d at 954.

Second, the ALJ defended her finding that the reported metal toxicity symptoms were not intense, persistent, or limiting. While Ms. Gappinger claimed that she had pain, weakness, numbness, and other neurological symptoms regularly, the ALJ looked to her previous denials of those same symptoms in addition to medical exams and tests to conclude that the heavy metal toxicity symptoms were not persistent, limiting, or intense. (AR at 1365). This is likewise a specific, clear, and convincing reason for the ALJ's

decision, reasonably interpreting medical records and making credibility findings when evidence collides. *See Ghanim*, 763 F.3d at 1163.

The same finally goes for the ALJ's finding that the evidence did not support the level of limitation alleged from Lyme disease symptoms (which overlap with symptoms stemming from heavy metal toxicity). The numerous citations to various medical evidence denying musculoskeletal and neurological symptoms and medical exhibitions of normal physical and mental functionality reasonably contradicts lay reports of pain, weakness, and other neurological problems. *See Thomas*, 278 F.3d at 954.

In the end, the ALJ's analysis featured specific, clear, and convincing reasons, supported by substantial evidence, for rejecting Ms. Gappinger's subjective testimony regarding the intensity, persistence, and limitations of her anorexia, heavy metal toxicity, and Lyme disease symptoms. The ALJ properly considered the entire longitudinal record while transparently explaining why she favored medical evidence over Ms. Gappinger's own statements. *See Lingenfelter*, 504 F.3d at 1036; *Andrews*, 53 F.3d at 1039. Finding no error, the Court next turns to the ALJ's treatment of medical practitioner opinions.

**B. Medical Opinions**

In addition to the subjective symptom testimony, the ALJ considered a variety of statements submitted by medical professionals when making her decision. (AR at 1370-74). Ms. Gappinger contests the ALJ's treatment of two of these medical opinions. (Doc. 19 at 20-26). In claims like this one, filed before March 27, 2017, Ninth Circuit law requires this Court to distinguish the opinions of (1) treating physicians who treat the claimant; (2) examining physicians who examine but do not treat the claimant; and (3) those who do neither. *Leon v. Berryhill*, 88 F.3d 1041, 1046 (9th Cir. 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Because the medical professionals at issue fall into separate categories, the Court considers each in turn.

1. NP Tackett's Medical Opinions

The first of these statements by NP Tackett concluded that Ms. Gappinger could not sit or stand for *any* period of time, could not retain any information, and was thus unable

to work. (AR at 543). NP Tackett later opined that Ms. Gappinger could not sit or stand for over two hours in a workday, that she would have to often change positions, and that she could not carry over 10 pounds. (*Id.* at 1287-88). That opinion continued, asserting that Ms. Gappinger's symptoms would cause her to become inattentive and that she would be off-task and even absent from work at least 6 days a month. (*Id.* at 1288).

After looking at NP Tackett's opinions, the ALJ found that they were not supported by her own treatment records. (*Id.* at 1371). She explained that those records focused on Ms. Gappinger's reports and recommendations and that there were no notations of physical examination. (*Id.*). Although she noted that NP Tackett had documented some lab work and intermittent lower extremity swelling and foot tenderness, the ALJ determined that the symptoms did not match the recommended level of impairment. (*Id.*). The ALJ continued, finding that the statements were also not consistent with "the regularity of normal findings throughout the record," especially with regard to physical function and concentration. (*Id.*). Lastly, she noted that the evidence, and Ms. Gappinger's own denials of gastrointestinal, musculoskeletal, and neurological symptoms, undercut the opinion that excessive time off work would be required. (*Id.*).

Under the regulatory scheme prior to March 2017, an NP medical opinion is given less weight than a physician's opinion. 20 C.F.R. § 404.1513(d). The standard set for an ALJ to discount an NP's testimony is accordingly lower than it would be for an "acceptable medical source" like a licensed psychologist or physician. *See* 20 C.F.R. §§ 416.913(a), 416.913 (d) (amended March 27, 2017). To discredit NP Tackett's statements, the ALJ need only give germane reasons for doing so. *See Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Ms. Gappinger contends that the ALJ incorrectly found that NP Tackett's opinions were not supported by the record. (Doc. 19 at 24). She begins by noting that the statements mentioned lab results and intermittent lower extremity swelling and foot tenderness. (*Id.* at 24). But she does not explain why the ALJ's reasoning for rejecting the opinion was legally deficient, nor could she. The ALJ determined that the treatment notes did not "shed light

on any physical effects of the labs," instead focusing on "subjective complaints," and that the recorded swelling and tenderness could not result in the desired level of impairment. (AR at 1371). That reasoning is germane to the presented opinions and explains why the ALJ did not see fit to place greater weight thereon. *See Molina*, 674 F.3d at 1111. It is also supported by substantial evidence, including past denials of certain symptoms and the consistency of normal physical test results in the record.[4] *See Thomas*, 278 F.3d at 959. In short, this argument is without merit.

Recalling that her symptoms have been inconsistent over time, Ms. Gappinger next contends that the ALJ failed to consider that fluctuation when discounting NP Tuckett's opinion. (Doc. 19 at 24-25). Although she is correct that an ALJ may not "pick out isolated instances of improvement" to discount an opinion, *Garrison*, 759 F.3d at 1017, that is not what happened here. Rather, the primary and sufficient reason why the ALJ discredited the opinions was because they were inconsistent with NP Tackett's own treatment records. *See* (AR at 1371). And to the extent that the ALJ cited other documentation, it was used to show consistent normal bodily function over a period of time. *Contra Attmore v. Colvin*¸ 827 F.3d 872, 877 (9th Cir. 2016). The Court, therefore, discerns no reversible error in the ALJ's examination and refutation of NP Tackett's statements.

2. Dr. Fruchtman's Medical Opinion

This next opinion was provided by Dr. Fruchtman in October 2015, after he examined Ms. Gappinger. (AR at 1370). It concluded that Ms. Gappinger required a wheelchair, had difficulty standing or walking for more than 2 hours in a workday, and advised against work around heights, moving machinery, and extreme temperatures. (*Id.*). It also noted symptoms of weakness and imbalance. (*Id.*). After her review of Dr. Fruchtman's opinion, the ALJ found that it was "not wholly consistent with the longitudinal record." (*Id.*). She found that the record reflected that Ms. Gappinger could stand or walk for over 2 hours in a workday and needed no assistive device given her

---

[4] Ms. Gappinger also says that NP Tackett's course of treatment was supported by Dr. Lowell Sparks, a doctor whose opinion was also considered by the ALJ. (Doc. 19 at 24). The Court is unsure how this could prove legal error in the ALJ's decision.

normal gait, coordination, and physical functionality. (*Id.*). She eventually assigned the opinion "some weight." (*Id.*).

Since Dr. Fruchtman physically examined Ms. Gappinger, his opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Andrews*, 53 F.3d at 1043. To meet this standard, an ALJ must form a detailed summary of the facts and the conflicting medical evidence, explaining her understanding of the evidence and making findings supporting that viewpoint. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Ms. Gappinger argues that the ALJ's analysis failed for two reasons.

First, she alleges that the decision did not acknowledge or dispel Dr. Fruchtman's findings that she had an assistive device and had issues with her gait. (Doc. 19 at 22). The Court finds, however, that the ALJ's decision identified the evidence conflicting with Dr. Fruchtman's statements and explained why that evidence prevailed over the opinions. *See Trevizo*, 871 F.3d at 676. To begin, it is indisputable that the ALJ understood that Dr. Fruchtman made the findings highlighted by Ms. Gappinger; they were listed in the denial and discussed in the ALJ's analysis of those findings. (AR at 1370).

But more than that, the ALJ provided specific reasoning aimed at Dr. Fruchtman's understanding. She identified and cited to other physical examinations reflecting unassisted gait, normal range of motion, and normal strength to undercut Dr. Fruchtman's view that Ms. Gappinger needed an assistive device and could not stand or walk for 2 hours in a workday. (*Id.* (citing *id.* at 559, 594, 70, 1126, 1842, 1862, 1917-29)). And the ALJ also explained that, while the symptomatology description in the opinion was somewhat consistent with the medical record because it was correct at a moment in time, it was not entirely longitudinally consistent given some improvement in Ms. Gappinger's symptoms. (*Id.*). This analysis is grounded in substantial evidence and a specific and legitimate rationale; the Court accordingly finds no legal error therein. *See Trevizo*, 871 F.3d at 676.

Ms. Gappinger also asserts that the ALJ violated the Ninth Circuit's holding in *Smith v. Kijakazi*, 14 F.4th 1108 (9th Cir. 2021), by not considering any duration or

fluctuation of symptoms. (Doc. 19 at 18-19). There, the record showed that the claimant's symptoms "dramatically improved during the later years of the claimed disability period," and the court held that it was error to discount the symptom evidence from the earlier time periods based on evidence that "had to do only" with what the claimant "was experiencing as of the time of the hearing." *Smith*, 14 F.4th at 1111, 1113. On this record, however, the ALJ noted that "most other physical examinations"—including from around the time at issue—noted unassisted gait. (AR at 1370). The ALJ also relied on contemporaneous findings confirming functionality in balancing, kneeling, and stooping. (*Id.*). Thus, the Court does not find that the ALJ violated the holding in *Smith*.

Second, Ms. Gappinger contends that the ALJ did not discuss that Dr. Fruchtman's opinion that fatigue was the "main, disabling effect" of her impairments. (Doc. 19 at 22-23 (citing AR at 496-97)). In his examination, Dr. Fruchtman specifically opined that Ms. Gappinger suffered from severe fatigue that prevented her from completing an 8-hour workday or 40-hour work week. (Doc.13 at 496-97). The ALJ, however, did not mention this determination in her opinion. (*Id*. at 1370).

The Court agrees with Ms. Gappinger that this lack of engagement with the evidence engenders legal error. *See Garrison*, 759 F.3d at 1012. ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). Not only did the ALJ not list this medical finding in her summary of the evidence, but none of the conflicting evidence she cited was used to dispute that Ms. Gappinger experienced debilitating fatigue that prevented her from finishing a full workday or week. (AR at 1370).

Indeed, not one of the ALJ's conclusions regarding Dr. Fruchtman's opinion had anything to do with fatigue; the discussion was limited to gait, physicality, and the degree of required limitation for temperature, heights, and machinery. (*Id.*). This falls far short of the pre-March 2017 test for discounting a medical examiner's opinion. *See Trevizo*, 871 F.3d at 676 (requiring a summary of findings with conflicting evidence and a reasoned rationale for rejecting the given finding of an examining physician); *Tommasetti v. Astrue*,

533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).

The Commissioner's arguments that the ALJ committed no error are unpersuasive. He first argues that Ms. Gappinger's argument rests on her own testimony that her fatigue continued beyond Dr. Fruchtman's examination. (Doc. 21 at 14). To be sure, a claimant's subjective symptom testimony is insufficient to prove that he or she is disabled. 42 U.S.C. § 423(d)(5)(A). But however true that rule is, it does not change the determination that the ALJ erred by failing to "consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041. Although the ALJ noted that certain symptoms described by Dr. Fruchtman were not supported by the longitudinal record, she did not say that fatigue was such a symptom. The Court is therefore unsure whether the ALJ viewed the fatigue statement and if she would find that later conflicting medical evidence limited its use in her analysis.[5]

The Commissioner next directs his attention to the ALJ's determination elsewhere in the decision that Ms. Gappinger's reported fatigue symptoms were undercut by her awake, alert, and oriented disposition, which refutes Dr. Fruchtman's opinion and renders any error harmless. (Doc. 21 at 14 (citing AR at 1357)); *see Molina*, 674 F.3d at 1115 (noting that harmless error rules apply in a Social Security Act analysis). Although the ALJ weighed Ms. Gappinger's disposition against the symptom testimony, there is no guarantee that she would do the same when confronted with an examining physician's notation of those symptoms. *See Lester*, 81 F.3d at 830-31.

This is especially true because (1) Dr. Fruchtman conducted a partial review of the record; and (2) the ALJ herself noted that fatigue symptoms are consistent with heavy metal toxicity. (AR at 365, 1370). Thus, Dr. Fruchtman might have consulted more than Ms. Gappinger's symptom testimony when providing his opinion on the effect of the fatigue symptoms. *See Ghanim*, 763 F.3d at 1162 (holding that if a physician's findings "are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion").

---

[5] And, if the ALJ were to find this statement about fatigue weighty, it might not be the case—as the Commissioner asserts—that the ALJ would depend only on Ms. Gappinger's comments about her fatigue symptoms.

By relying on neighboring rationales instead of the one at issue to provide a defense, the Commissioner proffers a post-hoc rationalization for the ALJ's lack of engagement with all the relevant opinion evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (holding that a decision is reviewed "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"). This argument is therefore not one the Court can consider. *See Garrison*, 759 F.3d at 1010.

**C. Remedy**

Having succeeded in one of her arguments, Ms. Gappinger requests that the matter be remanded to the Commissioner with instructions to award disability benefits. (Doc. 19 at 26-27). Whether to remand for additional evidence or instead award benefits is within this Court's discretion. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)).

In this case, the Court determines that "enhancement of the record would be useful" and will decline Ms. Gappinger's request. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). The ALJ should engage with Dr. Fruchtman's notations about Ms. Gappinger's debilitating fatigue and its relation to other evidence of record, whether conflicting or complementary, on remand. *See Harman v. Apfel*, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000) (holding that a remand for the payment of Social Security benefits is warranted when "there are no outstanding issues that must be resolved").

**IV. CONCLUSION**

Based on the above, the Court finds that the ALJ properly discredited the subjective symptom testimony because her reasoning was specific, clear, and convincing. She also adequately dismissed NP Tackett's statements because her reasoning was germane to those statements. But the ALJ's rationale regarding Dr. Fruchtman's opinion was incomplete and legally erroneous because it failed to address opinions detailing Ms. Gappinger's fatigue.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is reversed and remanded for the issuance of a new decision.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment and close this case accordingly.

Dated this 9th day of September, 2026.

James A. Teilborg
Senior United States District Judge